In re: Richard Allen MOORE; Johnsie Dianne Moore; Stephen M. Haynes; Donna Haynes; and Judy Dianne Thomason, Debtors.

Robert F. ANDERSON, Trustee,
Plaintiff–Appellant,

v.

Joseph S. RAINE, Jr., Plan Administrator for the Springs Industries, Inc. Employees' Profit Sharing and Pension Plans; and, Northern Trust Company, Plan Trustee, Defendants–Appellees.

No. 89–1555.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1990.

Decided July 12, 1990.

Robert Frank Anderson, Anderson, Lowder & Strait, P.A., Columbia, S.C. (Cecelia A. Clark, Anderson, Lowder & Strait, P.A., on the brief, Columbia, S.C.), for plaintiff-appellant.

Joe Wayne Underwood, Rogers, Thomas, Cleveland, Koon, Waters & Tally, Columbia, S.C. (Sherwood M. Cleveland, Rogers, Thomas, Cleveland, Koon, Waters & Tally, on the brief, Columbia, S.C.), for defendants-appellees.

Before WIDENER, PHILLIPS, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Here we must decide whether the interests of several debtors in an ERISA-qualified profit-sharing and pension plan are the property of their bankruptcy estates. The trustee in bankruptcy brought this suit seeking turnover of those interests. The plan administrator maintains, however, that the debtors' interests in the plan are not subject to turnover because they are protected by an enforceable restriction of transfer under ERISA which the Bankruptcy Code recognizes as dispositive "applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2).

We agree with the plan administrator that the debtors' interests in the plan are not the property of their bankruptcy estates and thus are not subject to turnover to the trustee in bankruptcy.

I.

Appellant Robert F. Anderson is the trustee for the estates of a number of Chapter 7 debtors who are employees of Springs Industries, Inc. The debtors participate in Springs Industries' comprehen-

sive retirement program. The retirement program consists of a Profit–Sharing and Pension Plan and Trust and a Retirement Plan and Trust. The plans contain anti-assignment provisions that prohibit alienation of employees' interests in them. The plans must include these anti-assignment provisions in order to qualify as ERISA funds, 29 U.S.C. § 1056(d)(1), and to maintain their tax-exempt status, 26 U.S.C. § 501. The plans provide for distribution of vested interests to a beneficiary only upon retirement, disability, or termination of service. The debtors have thus far received no distribution under the plans and will not be eligible to do so in the near future.

The trustee in bankruptcy brought this suit against the administrator of the Springs Industries plans. The trustee sought turnover of the bankrupts' interests in the profit-sharing and pension plan. In his view, this plan was not a spendthrift trust under South Carolina law and thus the interests in it were not subject to an enforceable restriction of transfer. The bankruptcy court did not reach the question of the status of the plan under South Carolina law, for it held that because the plan was ERISA–qualified, the interests in it were non-alienable and thus were excluded from the bankruptcy estates and not subject to turnover to the trustee. The district court affirmed this judgment, and the trustee in bankruptcy now appeals.

## II.

The Bankruptcy Code broadly defines the property of an estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, the Code excludes the debtor's interests in certain trusts from the bankruptcy estate by recognizing restrictions on the transfer of such interests:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). Thus, if "applicable nonbankruptcy law" enforces a restriction on the transfer of a debtor's interest in a trust, that interest will not be considered part of the bankrupt's estate.

■ At issue here is the meaning of the term "applicable nonbankruptcy law." The plan administrator argues that the restrictions on alienation of plan benefits in ERISA, 29 U.S.C. § 1056(d)(1), constitute "applicable nonbankruptcy law" which operates under § 541(c)(2) to exclude the debtors' interests in this ERISA-qualified plan from their bankruptcy estates. The bankruptcy trustee disagrees, arguing that the term "applicable nonbankruptcy law" does not include ERISA. He maintains that the term "applicable nonbankruptcy law" should be read narrowly to refer only to plans with transfer restrictions enforceable under state spendthrift trust law. We reject the trustee in bankruptcy's overly restrictive interpretation of § 541(c)(2) and hold that the term "applicable nonbankruptcy law" is not limited to state spendthrift trust law. In light of this disposition, we need not reach the question whether the plan constitutes a spendthrift trust under South Carolina law.

### A.

The trustee in bankruptcy's narrow interpretation of § 541(c)(2) cannot be squared with the section's broad language. "Applicable nonbankruptcy law" means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase "applicable nonbankruptcy law" or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.

In addition to violating the plain language of § 541(c)(2), the trustee's interpretation of "applicable nonbankruptcy law" is not consistent with other uses of the identical phrase throughout the Bankruptcy Code. In numerous places in the Bankruptcy Code, the term "applicable nonbankruptcy law" is used to refer to federal as well as state law. For example, 11 U.S.C. § 1125(d) states that whether postpetition disclosure statements contain adequate information is "not governed by any other-

wise applicable nonbankruptcy law," which includes, *inter alia*, federal securities law. *See In re Stanley Hotel, Inc.*, 13 B.R. 926, 931 (Bkrtcy.D.Colo.1981). Again, 11 U.S.C. § 108(a) extends the time in which a trustee can pursue a cause of action which the debtor could have pursued in accordance with the tolling provisions of "applicable nonbankruptcy law," which includes, *inter alia*, the Racketeer Influenced and Corrupt Organization Act. *See In re Ahead By a Length, Inc.*, 100 B.R. 157, 162–63 (Bkrtcy. S.D.N.Y.1989).

"[A] word is presumed to have the same meaning in all subsections of the same statute." *Morrison–Knudsen Constr. Co v. Director, OWCP*, 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983). *See also Barnson v. United States*, 816 F.2d 549, 554 (10th Cir.1987) ("[W]hen the same words are used in different sections of the law, they will be given the same meaning."). It is incongruous to give the same phrase in § 541(c)(2) a narrower construction than the identical phrase in other parts of the Bankruptcy Code, particularly since the disparate sections of the Bankruptcy Code were enacted together in a single comprehensive statute.

In further support of our reading of the plain language of § 541(c)(2), other provisions of the Bankruptcy Code demonstrate that when Congress intended to refer to state law, it did so explicitly. For example: 11 U.S.C. § 109(c)(2) limits Chapter 9 filings to entities authorized to be such debtors under "State law"; 11 U.S.C. § 522(b)(1) & (2) ties certain debtor's exemptions to "State law that is applicable"; and 11 U.S.C. § 523(a)(5) denies discharge of any debt for support pursuant to an order "made in accordance with State or territorial law." *See also* 11 U.S.C. §§ 362(b)(12), 903(1), and 1145(a).

Our refusal to narrow the phrase "applicable nonbankruptcy law" is consistent with our decision in *McLean v. Central States, Southeast & Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir.1985). Although *McLean* did not consider whether ERISA constitutes "applicable nonbankruptcy law," it declined to follow the restrictive mode of statutory analysis suggested here. Specifically, because "[t]he language of § 541(c)(2) d[id] not suggest such a limitation," the *McLean* court rejected the contention that "§ 541(c)(2) should be confined in its recognition of enforceable transfer restrictions to those found in 'traditional' spendthrift trusts." *Id.* at 1207 n. 1. "[I]f Congress had intended § 541(c)(2) to only apply to state spendthrift trusts, the term 'spendthrift trust' would have appeared in the statute, rather than the phrase 'applicable nonbankruptcy law.' " *In re Ralstin*, 61 B.R. 502, 503 (Bkrtcy.D.Kan.1986). The term "applicable nonbankruptcy law" suggests no limitation to state spendthrift trust law, and we refuse to read such a limitation into the statute. *See In re Mosley*, 42 B.R. 181, 191 (Bkrtcy.D.N.J.1984); *Warren v. G.M. Scott & Sons*, 34 B.R. 543, 544 (Bkrtcy.S.D.Ohio 1983); *In re Threewitt*, 24 B.R. 927, 929 (D.Kan.1982).

### B.

We acknowledge that several circuit courts have read the term "applicable nonbankruptcy law" in § 541(c)(2) narrowly to refer only to state spendthrift trust law. *See In re Daniel*, 771 F.2d 1352 (9th Cir. 1985); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Goff*, 706 F.2d 574 (5th Cir.1983). These decisions have, in the main, involved self-settled trusts in which the settlor is the beneficiary with the power to amend or to terminate the trust without penalty, whereas here the beneficiaries do not control the plan, cannot make unrestricted withdrawals from it, cannot borrow against it, and cannot amend it. The decisions have reached the conclusion that "applicable nonbankruptcy law" refers solely to state spendthrift trust law based on the legislative history of § 541(c)(2). Because we believe this legislative history to be irrelevant and in any event inconclusive, we respectfully decline to follow this course.

An appeal to legislative history is inappropriate here because the language of § 541(c)(2) is clear. "Legislative history is

irrelevant to the interpretation of an unambiguous statute." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989). "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington Northern R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). Congress enacted § 541(c)(2), not its accompanying legislative reports. We have no authority to limit the scope of a clear statutory term by recourse to the views of a legislative subgroup.

Even if the legislative history of § 541(c)(2) were relevant, however, it would be inconclusive. The House Report accompanying the Bankruptcy Reform Act of 1978 states that the term "applicable nonbankruptcy law" in § 541(c)(2) "preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." H.R.Rep. No. 595, 95th Cong., 2d Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6325. The same Report later adds that § 541(c)(2) "continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." *Id.* at 176, 1978 U.S.Code Cong. & Admin.News at 6136. In addition, the Senate Report explains that § 541(c)(2) "preserves restrictions on a transfer of a spendthrift trust...." S.Rep. No. 989, 95th Cong. 2d Sess. 83, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5869.

At most, these passages suggest that Congress intended state spendthrift trust law to be included within the meaning of "applicable nonbankruptcy law." Prior to the Bankruptcy Reform Act of 1978, "[i]f the plan or trust contained a valid spendthrift clause, then the plan interest was not property of the estate...." Seiden, *Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?,* 61 *Am.Bankr.L.J.* 219, 233 (1987). Section 541(c)(2) created a "new, specific exception so that certain trust interests containing enforceable restrictions on transfer" could be excluded from the newly and more broadly defined property of the bankruptcy estate. *Id.* at 235. Thus, Congress' emphasis in the legislative reports on "preserving" and "continuing" restrictions on a transfer of a state spendthrift trust meant only that it wanted to ensure that state spendthrift trust law be included within the restrictions of transfer enforceable under "applicable nonbankruptcy law." Nothing in the legislative history indicates, however, that Congress meant "applicable nonbankruptcy law" to refer exclusively to state spendthrift trust law. The clarity of the statutory term is simply not clouded by the legislative history.

### III.

We must next determine whether ERISA contains an enforceable transfer restriction that would bring the statute within the meaning of the term "applicable nonbankruptcy law" in § 541(c)(2). This inquiry requires us to interpret two coordinate federal statutes: ERISA and the Bankruptcy Code. In so doing, we must give full effect to both statutes. *See Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Our construction of the two statutes leads us to conclude that ERISA constitutes "applicable nonbankruptcy law," and thus that the debtors' interests in this ERISA-qualified profit-sharing and pension plan are excluded from their estates and hence from the reach of creditors.

The overriding purpose of ERISA is to guarantee the security of employees' retirement income. ERISA ensures that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it." *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359,

375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980).

One of the primary means by which ERISA protects workers' pension benefits is through restrictions on the assignment and alienation of these benefits. ERISA provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In addition, the Internal Revenue Code conditions qualification under ERISA and thus exemption from federal taxation on the non-transferability of pension benefits:

> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.

26 U.S.C. § 401(a)(13). The Treasury Regulation issued under 26 U.S.C. § 401(a)(13) is even more detailed:

> Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

Treas.Reg. § 1.403(a)–13(b)(1). These provisions each exhibit "a strong public policy against the alienability of an ERISA plan participant's benefits." *Smith v. Mirman*, 749 F.2d 181, 183 (4th Cir.1984).

ERISA's non-alienability provisions prevent both voluntary and involuntary encroachments on vested benefits. *General Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir.1980). Thus, neither plan participants nor general creditors may reach benefits under an ERISA-qualified profit-sharing and pension fund. *See Smith v. Mirman*, 749 F.2d at 183 (with narrow exceptions not relevant here, "an employees's accrued benefits under a qualified plan may not be reached by judicial process in aid of a third party creditor"); *see also Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 689–90 (4th Cir. 1983); Seiden, *supra*, 61 *Am.Bankr.L.J.* at 242 ("ERISA-required plan provisions pro-

hibiting assignment and alienation are enforceable under nonbankruptcy law against participants and their creditors."). Appellant's position would provide creditors with a means to circumvent this restriction on their access. We see no evidence that Congress intended to invite a creditor to push a debtor into involuntary bankruptcy in order to reach his ERISA funds.

Because ERISA clearly prevents general creditors from reaching a debtor's interest in this ERISA-qualified trust, it constitutes "applicable nonbankruptcy law" under which restrictions on the transfer of pension interests may be enforced. "Under the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee." *In re Threewitt*, 24 B.R. at 929.

In addition to being faithful to the language of both the Bankruptcy Code and ERISA, this conclusion furthers ERISA's broader purpose of ensuring uniform treatment of pension benefits throughout the country. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15–17, 107 S.Ct. 2211, 2219–20, 96 L.Ed.2d 1 (1987). "ERISA was designed to ensure that substantive pension benefits not be subject to the vagaries of state law." *PPG Industries Pension Plan A v. Crews*, 902 F.2d 1148 (4th Cir. 1990). Our holding ensures that the security of employee retirement benefits will not depend on the particularities of state spendthrift trust law. Were it otherwise, a state that did not recognize spendthrift trusts at all could nullify the anti-alienation provisions of ERISA—a result which is contrary to ERISA's general preemptive force. *See* 29 U.S.C. § 1144(a).

Furthermore, our holding avoids the specter of a bankruptcy trustee disqualifying an entire plan from tax exempt status by seeking turnover of a single bankrupt's interest in the plan. Under the trustee's interpretation, ERISA does not withhold the debtor's interest in an ERISA-qualified profit-sharing and pension plan from the bankruptcy estate. However, a plan's ERISA-qualification and tax exempt status

depend on compliance with the anti-assignment provisions in 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1). If § 541(c)(2) does not recognize ERISA as "applicable nonbankruptcy law" that operates to exclude pension interests from the bankrupt's estate, then the plan's anti-alienation provisions will be violated and the plan may be subject to disqualification and loss of tax-exempt status. *See McLean,* 762 F.2d at 1206 (recognizing the IRS position that payover of ERISA funds to Chapter 13 bankruptcy trustee would cause plan to lose its ERISA qualification and tax exempt status). We do not think Congress intended such a result. We can best harmonize ERISA, the Bankruptcy Code, and the Internal Revenue Code by reading "applicable nonbankruptcy law," 11 U.S.C. § 541(c)(2), to include ERISA.

### IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.