**In re James Hornsby LEAMON and Cheryl Elizabeth Leamon, Debtors.**

**Bankruptcy No. 3–89–02801.**

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 13, 1990.

Beverly P. Sharpe, Knoxville, Tenn., for debtors.

Mostoller & Stulberg, Ann Mostoller, Oak Ridge, Tenn., for trustee.

Edward S. Christenbury, General Counsel, Justin M. Schwamm, Sr., Harriet A. Cooper, Knoxville, Tenn., for Tennessee Valley Authority Retirement System.

MEMORANDUM ON TRUSTEE'S OBJECTIONS TO DEBTORS' AMENDED CLAIM OF EXEMPTION

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it objections filed March 1 and June 7, 1990, by Ann Mostoller, Trustee, to the claim of the debtor, James Hornsby Leamon, to an exemption in certain annuity plans established through the Tennessee Valley Authority Retirement System (TVARS).[1] The debtor claims his exemptions under Tennessee law pursuant to Tenn.Code Ann. § 26–2–111(1)(D) (1980) or, alternatively, Tenn.Code Ann. § 26–2–104(b) (Supp.1990). TVARS was authorized to intervene in this

---

**1.** All references in this Memorandum to the "debtor" are to James Hornsby Leamon.

contested proceeding pursuant to an order entered July 26, 1990. All facts and documents essential to a resolution of the issues before the court are stipulated through "Amended Stipulations" filed August 3, 1990.[2]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1990).

I

The debtor, trustee, and TVARS stipulate the following material facts:[3]

1. The debtor commenced this Chapter 7 case through the filing of a joint voluntary petition with his wife, Cheryl Elizabeth Leamon, on September 29, 1989. The debtor was forty-seven years old on the date his petition was filed.

2. At all times prior and subsequent to the filing of his bankruptcy petition, the debtor has been employed by the Tennessee Valley Authority (TVA). As a condition of employment, he is required to be a member of TVARS.

3. On the date he filed his Chapter 7 petition, the debtor had an interest in the following TVARS retirement plans: (1) an "Annuity Savings Account" which, funded exclusively by contributions from the debt-

or, had a value of $49,838.27; (2) 427.28 shares in a "Variable Annuity Fund";[4] and (3) a vested interest in a pension plan. The TVARS pension plan is not an issue in this contested proceeding.

4. The TVARS annuity plans upon which this contested proceeding is focused are qualified plans under Internal Revenue Code (IRC) § 401(a) (26 U.S.C.A. § 401(a) (West Supp.1990)).[5]

5. The TVARS annuity plans are "governmental plan[s]" not subject to the provisions of ERISA title I.[6]

6. The "Rules And Regulations Of The TVA Retirement System" prohibit the debtor from withdrawing his annuity in a lump sum except upon voluntary or involuntary termination of his employment or retirement.

7. Prior to and on July 1, 1988, the date Tenn.Code Ann. § 26–2–104(b) (Supp.1990) became effective, the debtor owed at least one unsecured debt which he seeks to discharge through his Chapter 7 case.

The parties also stipulate at paragraph 12 of the "Amended Stipulations" that "[t]he issues of whether the TVARS annuity plans are covered by the exemption provided in Tenn.Code Ann. § 26–2–104(b)

2. The trustee and debtor filed written "Stipulations" on July 10, 1990. The superseding "Amended Stipulations" were filed after TVARS was permitted to intervene.

3. These facts are summarized from the "Amended Stipulations" filed by the parties rather than quoted verbatim.

4. The value of these shares, if any, is not stipulated.

5. The trustee, in a memorandum filed August 17, 1990, appears to argue that certain rules and regulations adopted by TVARS prevent the annuity plans in dispute from being qualified under IRC § 401(a). "Trustee's Brief In Support Of Her Objection To Debtors' Amended Claim Of Exemptions," at p. 4. The court will not consider this argument as it is inconsistent with the trustee's stipulation that the TVARS annuity plans are qualified under IRC § 401(a).

6. Title I of ERISA, embodying its labor law provisions, is codified at title 29 of the United States Code. Title II of ERISA, codified in various sections of title 26 of the United States Code, contains amendments and additions to

the Internal Revenue Code essential to the establishment of a plan as a qualified plan. The tax qualifying provisions of ERISA title II are not within the preemptive scope of ERISA § 514(a) (29 U.S.C.A. § 1144(a) (West 1985)), which provides in material part:

[T]he provisions of this subchapter [ERISA title I] and subchapter III [ERISA title IV] of this chapter shall supersede any and all State laws insofar as they ... relate to any employee benefit plan described in section 1003(a) of this title....

ERISA § 4 (29 U.S.C.A. § 1003 (West 1985)) provides in material part:

(a) Except as provided in subsection (b) of this section ... this subchapter [ERISA title I] shall apply to any employee benefit plan....

(b) The provisions of this subchapter shall not apply to any employee benefit plan if— (1) such plan is a governmental plan (as defined in section 1002(32) of this title)....

By stipulating that the TVARS annuity plans are "governmental plan[s]," the parties agree that the Tennessee Exemption Statutes relied upon by the debtor are not, for purposes of this contested proceeding, within the preemptive scope of ERISA § 514(a).

(Supp.1989), and whether that statute is preempted by ERISA, are controlled by this Court's decision in *In re Bowman,* 109 B.R. 789 (Bankr.E.D.Tenn.1990)." *Bowman* is discussed *infra.*

## II

In an effort to define the issues encompassed by the trustee's objections, the court requested the parties to file a statement of issues. This "Joint Statement Of Issues," filed August 3, 1990, provides:

> The parties agree that the issues to be determined by the Court are the following:
>
> 1. Whether the Debtors' exemption under T.C.A. § 26–2–104(b) is invalid in that it would violate Tennessee Constitution Article 1, Section 20, as an unconstitutional impairment of a contractual obligation insofar as it affects debts incurred prior to the affective [sic] date of the act.
>
> 2. Whether the claimed exemption is invalid in that the trustee, pursuant to 11 U.S.C. § 544(a)(2), can use the "strong arm" power as in § 544(a)(2) as a hypothetical unsatisfied creditor to reach the assets of the plan.
>
> 3. Whether the exemption provided by subsection B [sic] of T.C.A. § 26–2–104 applies to claims of creditors but does not apply to claims of a trustee of a debtor's bankruptcy estate.
>
> 4. Whether T.C.A. § 26–2–104(b) and T.C.A. § 26–2–111(D) [sic] are void and unconstitutional for all purposes, having been found unconstitutional in certain aspects by this Court in previous decisions.[7]
>
> 5. Whether the annuity savings account of the Debtor is property of the estate or whether it qualifies as a spendthrift trust under 11 U.S.C. § 541(c)(2).

Although not designated as a separate issue, the parties in their "Joint Statement Of Issues" restate, in part, the language in their "Amended Stipulations" that the court's decision in *In re Bowman,* 109 B.R. 789 (Bankr.E.D.Tenn.1990), is controlling on "the applicability of T.C.A. § 26–2–104(b) and T.C.A. § 26–2–111 to pension or retirement plans established or maintained by the United States...."[8]

In *Bowman,* the joint debtors claimed an exemption under Tenn.Code Ann. § 26–2–104(b) (Supp.1990) in retirement benefits due the husband under TVARS. The trustee acknowledged that the various plans embodied within TVARS in which Mr. Bowman had an interest were qualified plans under IRC § 401(a), and conceded that the TVARS plans were "governmental plan[s]" not subject to the provisions of ERISA title I.[9] 109 B.R. at 790. The court concluded that the trustee, therefore, "agree[d] that the TVARS plans are not subject to the preemptive effect of ERISA § 514(a)." *Id.* (footnote omitted). The trustee, however, contended that the legislative history to Tenn.Code Ann. § 26–2–104(b) (Supp.1990) evidenced a legislative intent to exclude retirement plans

---

7. This issue is premised upon two prior rulings of this court: *In re Sellers,* 107 B.R. 152 (Bankr. E.D.Tenn.1989), and *In re Messing,* 114 B.R. 541 (Bankr.E.D.Tenn.1990), appeal filed May 24, 1990, and cross appeal filed May 29, 1990. In *Sellers,* the court held that Tenn.Code Ann. § 26–2–111(1)(D) (1980), which allows a debtor to exempt his interest in pension and profit sharing plans qualified under IRC §§ 401(a), 403(a), 403(b), 408, or 409 (26 U.S.C.A. §§ 401(a), 403(a), 403(b), 408, or 409 (West Supp.1990)), was within the preemptive scope of ERISA § 514(a), where the pension and profit sharing plans at issue were subject to the labor law provisions of ERISA title I. In *Messing,* the court held, *inter alia,* that Tenn.Code Ann. § 26–2–104(b) (Supp.1990), which allows a debtor to exempt his interest in a "retirement plan" qualified under IRC § 401(a), 403(a), 403(b), or

408 (26 U.S.C.A. § 401(a), 403(a), 403(b), or 408 (West Supp.1990)), was within the preemptive scope of ERISA § 514(a) where the "retirement plan" in dispute was subject to the labor law provisions of ERISA title I. In sum, the court held in *Sellers* and *Messing* that ERISA preempts Tenn.Code Ann. §§ 26–2–111(1)(D) (1980) and 26–2–104(b) (Supp.1990), and that the debtors could not claim benefits owing under their retirement plans as exempt under the respective statutes. The court does not agree with the form in which the parties couch issue No. 4. *Sellers* and *Messing* do not address constitutional issues.

8. *Bowman* does not address Tenn.Code Ann. § 26–2–111 (1980).

9. *See supra* note 6.

established or maintained by agencies or instrumentalities of the United States. 109 B.R. at 791. The court held that it would not rely on legislative history to contradict the clear and unambiguous language of the statute, and that Tenn.Code Ann. § 26–2–104(b) (Supp.1990) "applies to any 'retirement plan,' public or private, qualified under the designated sections of the Internal Revenue Code ... [including] the TVARS plans in which the debtors claim an exemption." 109 B.R. at 792. The trustee's objection was accordingly overruled, and Mr. Bowman's exemption under Tenn. Code Ann. § 26–2–104(b) (Supp.1990) was allowed.

The parties, for purposes of this contested proceeding, agree, under the authority of *Bowman,* that the disputed TVARS annuity plans are within the scope of Tenn. Code Ann. § 26–2–104(b) (Supp.1990). They further agree that the TVARS plans are "governmental plan[s]" not subject to the labor law provisions of ERISA title I, and that Tenn.Code Ann. § 26–2–104(b) (Supp.1990) is, therefore, not preempted by ERISA.

### III

■ The parties, through Issue No. 5, as set forth in the "Joint Statement Of Issues," seek a determination of whether the debtor's interest in the TVARS annuity plans is property of the estate or whether the plans qualify as "spendthrift trust[s]" under § 541(c)(2).[10]

The trustee and debtor, in reliance on prior decisions of this court, contend that the scope of § 541(c)(2) is limited to state spendthrift trust law. The court concludes that § 541(c)(2) is broader than suggested by its prior decisions. The court also concludes that the trustee's objections can be resolved exclusively within the context of § 541(c)(2) without consideration of state spendthrift trust law. The debtor's interest in the TVARS annuity plans in dispute is not property of the estate.

---

10. Issue No. 5 is worded in terms of a singular "annuity savings account." The parties stipulate that the debtor has an interest in an "Annuity Savings Account" and a "Variable Annuity

Under § 541 of the Bankruptcy Code, property of the estate is broadly defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979 & Supp.1990). The congressional intent that the bankruptcy estate be all encompassing is evidenced by the legislative history to § 541(a)(1):

> The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act....

S.Rep. No. 989, 95th Cong., 2d Sess. 83, H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5869, 6323.

The Bankruptcy Code further provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision ... (A) that restricts or conditions transfer of such interest by the debtor...." 11 U.S.C.A. § 541(c)(1)(A) (West Supp.1990). The general rule of § 541(c)(1)(A) is, however, qualified by § 541(c)(2) which provides an exception:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable non-bankruptcy law* is enforceable in a case under this title.

11 U.S.C.A. § 541(c)(2) (West Supp.1990) (emphasis added).

This court, speaking out of the Northern Division, has previously held that the term "applicable nonbankruptcy law" in § 541(c)(2) must be construed within the context of state spendthrift trust law. *In re Stansberry,* 101 B.R. 508 (Bankr.E.D. Tenn.1989); *In re Tallent,* No. 3–87–00094, Slip Op. (Bankr.E.D.Tenn. Dec. 20, 1989); *In re Faulkner,* 79 B.R. 362 (Bankr.E.D. Tenn.1987); *In re Ridenour,* 45 B.R. 72 (Bankr.E.D.Tenn.1984).[11] Chief Bankrupt-

---

Fund." This Memorandum deals with both annuity plans.

11. *Ridenour,* a decision handed down by Bankruptcy Judge Clive W. Bare, overrules an earlier

cy Judge Ralph H. Kelley, speaking out of the Southern Division, has held in a similar manner. *Brown v. Westvaco Corp. (In re Cassada)*, 86 B.R. 541 (Bankr.E.D.Tenn. 1988); *In re Elsea*, 47 B.R. 142 (Bankr.E.D. Tenn.1985). These cases are consistent with decisions out of several circuit courts, which have relied primarily on legislative history in concluding that § 541(c)(2) has application exclusively to state spendthrift trust law.[12] *Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (Matter of Goff)*, 706 F.2d 574 (5th Cir. 1983). The trial courts adhering to the principles espoused by these courts are numerous. *See, e.g., Schechter v. Balay (In re Balay)*, 113 B.R. 429 (Bankr.N.D.Ill. 1990); *Matter of Tisdale*, 112 B.R. 61 (Bankr.D.Conn.1990); *In re Burns*, 108 B.R. 308 (Bankr.W.D.Okla.1989); *In re Toner*, 105 B.R. 978 (Bankr.D.Colo.1989); *Matter of Herndon*, 102 B.R. 893 (Bankr. M.D.Ga.1989).

This court does not recall a proceeding it has been called upon to resolve, including the instant proceeding, where a party has contended that § 541(c)(2) has application other than to state spendthrift trust law. The court, therefore, will raise *sua sponte*

the issue of whether the term "applicable nonbankruptcy law" under § 541(c)(2) is so limited.

## IV

ERISA § 206(d) (29 U.S.C.A. § 1056(d) (West Supp.1990)), embodied within the provisions of ERISA title I,[13] provides at paragraph (1) that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." IRC § 401(a)(13) (26 U.S.C.A. § 401(a)(13) (West Supp.1990)) provides in material part at paragraph (A) that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated...."[14]

This court, in its decision in *In re Messing*, 114 B.R. 541 (Bankr.E.D.Tenn.1990), in addition to holding that Tenn.Code Ann. § 26–2–104(b) (Supp.1990) was preempted by ERISA,[15] also held that ERISA § 206(d)(1) and IRC § 401(a)(13) provided the debtor with a "Federal law" exemption of his interest in an ERISA qualified plan cognizable under Bankruptcy Code § 522(b)(2)(A).[16] 114 B.R. at 545–50. The court's decision in *Messing* was premised upon three factors: (1) its conclusion that the Supreme Court in *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), expressly characterized ERISA

decision by Judge Bare that "a restriction on a transfer of a beneficial interest of a chapter 7 debtor in a qualified, employer-created, spendthrift ERISA trust plan is enforceable under federal nonbankruptcy law" and is, therefore, within the purview of § 541(c)(2). *In re Holt*, 32 B.R. 767, 772 (Bankr.E.D.Tenn.1983).

**12.** The legislative history speaks of excluding the debtor's "interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 176. U.S.Code Cong. & Admin.News 1978, 6136.

**13.** *See supra* note 6.

**14.** ERISA § 206(d) and IRC § 401(a)(13) do, however, permit the alienation of benefits under provisions of a "qualified domestic relations order." ERISA § 206(d)(3) (29 U.S.C.A.

§ 1056(d)(3) (West Supp.1990)) and IRC § 401(a)(13)(B) (26 U.S.C.A. § 401(a)(13)(B) (West Supp.1990)).

**15.** *See supra* note 7.

**16.** Bankruptcy Code § 522(b)(2)(A) provides in material part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

....

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition.... 11 U.S.C.A. § 522(b)(2)(A) (West 1979 & Supp. 1990).

§ 206(d)(1) as a federal exemption; (2) decisions out of the Sixth Circuit holding that the anti-alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13) prevent both voluntary and involuntary encroachments on vested benefits; and (3) the clear and unambiguous language of § 522(b)(2)(A) which prohibited the court from relying on the illustrative list of Federal law in the legislative history as anything more than a nonexclusive list indicative of what might qualify as Federal law cognizable under § 522(b)(2)(A). 114 B.R. at 547–50. The court is persuaded that its past reliance on legislative history to limit the clear language of § 541(c)(2) was misplaced, and that its analysis in *Messing* has application, in part, to the instant proceeding.

The United States Court of Appeals for the Fourth Circuit, in recently holding that the interests of several debtors in an ERISA qualified profit sharing and pension plan were excluded from property of the estate, refused to limit the term "applicable nonbankruptcy law" under § 541(c)(2) to state spendthrift trust law.[17] *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990). In considering the plan in dispute, the court found that § 541(c)(2) was clear and unambiguous, and that it was, therefore, inappropriate to rely on legislative history to limit the scope of the statute. 907 F.2d at 1478–79. The court further determined that even if the legislative history was material it was inconclusive, and that because ERISA "prevents general creditors from reaching a debtor's interest in … [an] ERISA-qualified trust, it constitutes 'applicable nonbankruptcy law' under which restrictions on the transfer of pension interests may be enforced." 907 F.2d

at 1480. The Fourth Circuit concluded that "[u]nder the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee." *Id.* (quoting *Clotfelter v. CIBA–GEIGY Corp. (In re Threewitt)*, 24 B.R. 927, 929 (D.Kan. 1982)).

The court recognizes that the TVARS annuity plans at issue in this contested proceeding are "governmental plan[s]" not subject to the provisions of ERISA title I. These plans are, therefore, not subject to the anti-assignment and anti-alienation provisions of ERISA § 206(d)(1). The TVARS annuity plans are, however, for purposes of maintaining their tax exempt status, stipulated to be qualified under IRC § 401(a). As qualified plans, the TVARS plans, in compliance with IRC § 401(a)(13), contain language prohibiting the assignment or alienation of benefits provided under the plans.[18]

The two anti-assignment and anti-alienation statutes, ERISA § 206(d)(1) and IRC § 401(a)(13), are substantially identical in content. Plans such as those administered by TVARS may still be qualified plans under the Internal Revenue Code notwithstanding that they are not subject to the provisions of ERISA title I.

This court is persuaded that its rationale in *Messing* and the Fourth Circuit's rationale in *Moore* extends to a "governmental plan" qualified under IRC § 401(a), notwithstanding that ERISA § 206(d)(1) has no application. The term "applicable nonbankruptcy law" extends to retirement plans qualified under IRC § 401(a) without regard to whether those plans meet the

---

**17.** The plan in dispute was subject to the provisions of ERISA title I and was, therefore, required to include the anti-assignment and anti-alienation provision of ERISA § 206(d)(1), and, for tax qualification purposes, IRC § 401(a)(13).

**18.** Section 12 of the Retirement Rules embodied within the "Rules and Regulations of the TVA Retirement System," which governs the TVARS annuity plans in dispute, provides in material part:

[No] transfer, assignment, pledge, seizure, or other voluntary or involuntary alienation or

encumbrance of any pension, annuity, or other benefit provided hereunder will be permitted or recognized, and in the event of any such attempted alienation or encumbrance (including specifically, but without limitation, any attempted attachment, levy, execution, garnishment, or other legal process affecting such pension, annuity, or other benefit), the board may in its uncontrolled discretion declare the said pension, annuity, or other benefit to be temporarily or permanently forfeited by the beneficiary....

various state law criteria essential to the establishment of a spendthrift trust. In reaching this conclusion, the court is also guided by those decisions of the United States Court of Appeals for the Sixth Circuit discussed in *Messing.*

## V

The following analysis includes a discussion of authority dealing with retirement plans qualified under both ERISA § 206(d)(1) and IRC § 401(a). This authority, in the court's opinion, is equally applicable to a "governmental plan" qualified only under the provisions of IRC § 401(a).

## RELIANCE ON
## LEGISLATIVE HISTORY

*Daniel, Lichstrahl, Graham, Goff,* and their progeny, rely primarily on legislative history in construing § 541(c)(2) to have application exclusively to state spendthrift trust law. The clear language of § 541(c)(2) belies such a narrow construction.

In its analysis of the propriety of relying upon legislative history to ascertain the scope of § 541(c)(2), the Fourth Circuit in *Moore* stated:

> An appeal to legislative history is inappropriate here because the language of § 541(c)(2) is clear. "Legislative history is irrelevant to the interpretation of an unambiguous statute." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989). "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington Northern R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)).... We have no authority to limit the scope of a clear statutory term by recourse to the views of a legislative subgroup.

907 F.2d at 1478–79.

"It is an elementary rule of statutory construction that [courts] ... initially look to the plain language of the statute to determine the meaning of legislation." *McBarron v. S & T Indus., Inc.,* 771 F.2d 94, 97 (6th Cir.1985). *See Powell v. Tucson Air Museum Foundation of Pima County,* 771 F.2d 1309, 1311 (9th Cir.1985) (when interpreting a statute, the plain meaning of the words used is controlling in the absence of a clearly expressed legislative intent to the contrary). The Sixth Circuit has observed:

> The primary function of the courts in construing legislation is to effectuate the legislative intent. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Legislative intent may be ascertained from the clear language of the statute itself or from available legislative materials which clearly reveal this intent. Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, analyzing the provision in context with the whole....

*Ray v. Security Mutual Finance Corp. (In re Arnett),* 731 F.2d 358, 360–61 (6th Cir.1984). The Sixth Circuit has also stated:

> Our ... task in determining the scope of [a] ... statute is to examine its language. We note that "[i]f the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'"

*United States v. Premises Known as 8584 Old Brownsville Rd.,* 736 F.2d 1129, 1130 (6th Cir.1984) (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). *See also United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)").

There is simply nothing in § 541(c)(2) which requires the court to resort to legislative history to clarify the term "applicable nonbankruptcy law." To suggest that the term is limited to state spendthrift trust law is to elevate the legislative history of the statute to a stature equal to that of the statute.[19] As the Fourth Circuit observed in *Moore*, "Congress enacted § 541(c)(2), not its accompanying legislative reports." 907 F.2d at 1479.

## SECTION 401(a)(13) AS "APPLICABLE NONBANKRUPTCY LAW"

■ The court must next determine whether IRC § 401(a)(13) provides the TVARS annuity plans in dispute with a restriction on the transfer of the debtor's beneficial interest enforceable under "applicable nonbankruptcy law." This court concludes that IRC § 401(a)(13) does constitute "applicable nonbankruptcy law," and that the debtor's interest in the TVARS annuity plans is not property of the estate. These plans are, therefore, not subject to the claims of the trustee and creditors.

The Sixth Circuit has held that the anti-assignment and anti-alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13) prevent both voluntary and involuntary encroachment on vested benefits. *General Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir.1980). In finding that plan benefits were not subject to garnishment, the court in *Buha* stated:

> Both ERISA and the section of the Internal Revenue Code (IRC) dealing with "qualified" pension, profit-sharing and stock bonus plans contain provisions against assignment or alienation of plan benefits. Nearly identical language in 29 U.S.C. § 1056(d)(1) (ERISA [§ 206(d)(1)]) and 26 U.S.C. § 401(a)(13) (IRC) requires plans to contain a provision that "benefits provided under the plan may not be assigned or alienated."
> . . . .
> The Act [ERISA] provides for a division of authority in the issuance of regulations:

> (c) Extended application of regulations prescribed by Secretary of Treasury relating to minimum participation standards, minimum vesting standards, and minimum funding standards.

> Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter. Except as otherwise expressly provided in this chapter, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sections 410(a), 411 and 412 of Title 26. 29 U.S.C. § 1202(c).

> . . . .

> Pursuant to this authority the Secretary of Treasury issued Internal Revenue Service Regulation § 1.401(a)–13, which provides in part:

> (b) *No assignment or alienation.*— (1) *General rule.* Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process. 26 C.F.R. § 1.401(a)–13 (1979).

As Judge Garth pointed out in *Baker v. Otis Elevator Co.*, 609 F.2d 686, 690 (3d Cir.1979), Congress specifically delegated to the Secretary of the Treasury the authority to issue regulations concerning participation, vesting and funding stan-

---

**19.** The *Moore* court observed that even if relevant, the legislative history to § 541(c)(2) does not evidence a congressional intent that Con-

gress intended "applicable nonbankruptcy law" under § 541(c)(2) to refer exclusively to state spendthrift trust law. 907 F.2d at 1479.

dards. Moreover, Congress provided that regulations issued by the Treasury Department would apply to analogous employee benefit sections of Title I of the Act in the same areas. Since the regulation in question is a legislative rather than an interpretive regulation, it is required to be followed unless it was issued in excess of the statutory authority of the Secretary or was "arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." *Id.* at 691, *quoting Batterson v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). The regulation in question clearly passes this test.

Giving the required effect to Reg. § 1.401(a)–13, we conclude that pension plan benefits are not subject to garnishment. . . .

623 F.2d at 460–63 (footnote omitted).

More recently, the Sixth Circuit refused to establish an implied exception to the anti-alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13) based upon fraud. *United Metal Products Corp. v. Nat'l Bank of Detroit,* 811 F.2d 297 (6th Cir.1987). In this case the plaintiff, United Metal Products Corp., maintained a profit sharing plan for its employees. One of the employee participants in the plan embezzled funds belonging to the plaintiff. The defendant trustee of the plan refused to comply with a writ of garnishment, contending that the employee's account was not subject to garnishment under IRC § 401(a)(13). The plaintiff sought a declaratory judgment creating an implied exception to the anti-alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13). The district court denied relief. The court of appeals, in affirming the district court, stated: "[W]e hold that there is no fraud exception to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d) or to the Internal Revenue Code, 26 U.S.C. § 401(a)(13), due to an employee's fraudulent or criminal conduct directed against an employer." 811 F.2d at 300.

The Sixth Circuit through *Buha* and *United Metal Products Corp.* has clearly held that IRC § 401(a)(13) prevents general creditors from reaching a debtor's interest in a plan qualified under the provisions of IRC § 401(a). There are no exceptions. Accordingly, IRC § 401(a)(13) constitutes "applicable nonbankruptcy law" under which restrictions on the transfer of the debtor's interest may be enforced. Under the clear and unambiguous language of § 541(c)(2), if the anti-alienation provisions in the TVARS plans mandated by IRC § 401(a)(13) are enforceable against general creditors, they are enforceable against the trustee. *In re Moore,* 907 F.2d at 1480; *In re Threewitt,* 24 B.R. at 929.

## VI

In conclusion, the court need not consider whether the TVARS annuity plans qualify as spendthrift trusts under state law. As qualified plans under IRC § 401(a), the TVARS annuity plans contain the anti-alienation and anti-assignment provisions mandated by IRC § 401(a)(13). As IRC § 401(a)(13) constitutes "applicable nonbankruptcy law," the debtor's interest in the TVARS plans is excluded from property of the estate under § 541(c)(2). This decision makes it unnecessary to consider all of the issues formulated by the parties in the "Joint Statement Of Issues" filed August 3, 1990.

To the extent this court's decisions in *Stansberry, Tallent, Faulkner* and *Ridenour* stand for the proposition that the term "applicable nonbankruptcy law" under § 541(c)(2) is limited exclusively to state spendthrift trust law, those decisions are overruled.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order overruling the trustee's objections will be entered.