**In re Paul MANN and Corine Mann, Debtors.**

**Bankruptcy No. 96–46048–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Oct. 11, 1996.

June Porter, Detroit, MI, for Debtors.

David Lerner, Bloomfield Hills, MI, Colleen Corcoran, Birmingham, MI, for Trustee.

## MEMORANDUM OPINION

STEVEN W. RHODES, Chief Judge.

The issue before the Court is whether the debtors in this case can claim an exemption under 11 U.S.C. § 522(d)(10)(E) for a Lincoln National Insurance Company retirement annuity. The trustee objects to the $35,000 exemption taken by the debtors for the annuity. The debtors contend that the exemption is allowable under 11 U.S.C. § 522(d)(10)(E). On September 4, 1996, an evidentiary hearing was held and this Court took the matter under advisement. For the reasons stated below, this Court concludes that the annuity is not subject to exemption.

### I. *Background*

The debtors filed a voluntary petition for Chapter 7 on May 6, 1996, without the required schedules. On June 10, 1996, the debtors filed schedules.[1] Schedule A discloses that debtor Corine Mann individually owned a home valued at $35,000, subject to a mortgage of $19,000. Schedule B lists the debtors' personal property as $250.00 cash, $5,000 in household furniture, $1,000 in personal apparel, and an item described as a jointly-owned "Annuity: Lincoln National Insurance Company, $35,000." Paul Mann individually listed a $247,156.50 judgment in his favor as an additional asset. In the portion of the schedule that called for interests in an IRA, ERISA, Keogh, or other pension or profit-sharing plan, the debtors indicated that they had nothing to declare.

Schedule C shows that the debtors elected to take exemptions under 11 U.S.C. § 522(b)(1). They claimed the following exemptions:

| | |
|---|---|
| Homestead | $ 7,500 [2] |
| Household furnishings | $ 3,000 [3] |
| Personal wearing | $ 1,000 [4] |
| Automobile | $ 1,200 [5] |
| Interest in annuity | $35,000 [6] |

Schedule D lists only one secured creditor, Standard Federal Bank, which holds a mortgage of $19,000 on the home owned by Corine Mann. No priority unsecured creditors are listed on Schedule E.

Nine unsecured creditors with non-priority claims are listed on Schedule F. Six of these creditors are owed credit card debts totaling $27,269. Another creditor, Counseling Center, P.C., is owed $1,600 for medical services. The remaining two creditors are Detroit Edison (in care of Midwestern Audit Services), owed $3,600 for electrical service for a business, and F.D. Stella Products, owed a $66,000 judgment on a business lease. The unsecured, non-priority claims total $98,469.

No executory contracts or unexpired leases are listed on Schedule G.

Schedule I lists two children as dependents, Danielle Smith, age 16, and Christopher Mann, age 7. Paul Mann listed the Wayne County Mental Health Board as his employer and listed employment of "12 years." His monthly gross income is listed as $3,000, with a net income of $2,000. Corine Mann listed her employer as Mercy Hospital and described her length of employment as 1 year. Her gross monthly salary is listed as $4,015, with a net income of $2,500.

---

1. Federal Rule of Bankruptcy Procedure 1007(b) requires the debtor to file complete schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, and a statement of financial affairs, as well as a statement of intentions. Bankruptcy Rule 1007(c) requires that these schedules be filed with the petition or within 15 days thereafter. In this case, the debtors filed their petition on May 6, 1996 and did not file the schedules until June 10, 1996, well after the required 15 days.

2. The schedule states that this exemption is made pursuant to 11 U.S.C. § 522(d)(1).

3. The exemption for household furnishings is taken pursuant to 11 U.S.C. § 522(d)(3).

4. This exemption is claimed pursuant to 11 U.S.C. § 522(d)(3).

5. This exemption is claimed pursuant to 11 U.S.C. § 522(d)(2).

6. This exemption is claimed pursuant to 11 U.S.C. § 522(d)(10)(E).

The Schedule J which was initially filed lists the debtors' current monthly expenses, including $410 for mortgage payment, utilities of $350, home maintenance of $100, food expenses of $250, clothing costs of $100, laundry and dry cleaning costs of $75, medical and dental expenses of $60, transportation costs of $175 (not including car payments), costs of recreation, entertainment, newspapers, etc. of $75, charitable contributions of $60, automobile insurance of $400, automobile payments of $850, and school tuition for son of $560. These monthly expenses total $3,465. When these expenses are subtracted from the debtors' monthly income, the debtors show excess income of $1,035.

The debtors' statement of financial affairs reflects that during 1995, the debtors were employed by the County of Wayne and Mercy Hospital, the same employers listed in Schedule I. However, the statement of financial affairs showed that the debtors' 1995 annual gross salaries were higher than the 1996 gross salaries reported on Schedule I. Paul Mann reported his gross annual salary in 1995 as $54,000, rather than the $36,000 shown in Schedule I for 1996. Corine Mann reported her gross 1995 salary was $53,000, rather than the $48,180 shown in Schedule I for 1996.

### A.  Debtors' Testimony

On September 4, 1996, the debtors testified at the evidentiary hearing. At the outset of the hearing, the debtors' attorney indicated that she had received amended schedules from the debtors. She provided a copy of the amended schedules to the trustee at the hearing, but not to the Court. Although the debtors reviewed these schedules during their testimony, the schedules were not filed with the Court until September 11, 1996, and only because this Court insisted.[7]

Paul Mann testified that he is 53 years of age and has worked for Wayne County Mental Health Board for 18 years, rather than the 12 years that he initially reported on

Schedule I. He stated that he plans to retire in two years, although his employer does not demand mandatory retirement at that time. He testified that upon retirement, he will receive a pension of half of his annual income of $54,000. His pension is not listed in the initial schedules or in the first amended schedule dated August 26, 1996.

Mr. Mann further testified that his dependent, Danielle Smith, is 14 years of age, not 16 years of age as reported on Schedule I. He stated that Danielle is in the eleventh grade and attends a private school. Although Schedule J initially listed monthly "tuition for son" of $560, Mr. Mann testified that the total tuition for his son and daughter to attend private school amounts to $766 per month. This amount is the amount stated on the first amended schedule J, dated August 26, 1996. Mr. Mann estimated that the total annual cost of tuition for both children was approximately $7,000.

Mr. Mann further testified that the monthly mortgage payment is $380, although it is listed on the initial schedule and the first amended schedule as $410. He acknowledged that the mortgage payment in July of 1996 was only $363.78.

Mr. Mann stated that the $400 per month listed in Schedule J for automobile insurance should be amended to $800 per month, to reflect insurance for two vehicles. Mr. Mann did not have any documentary evidence of the cost of his car insurance, although his first amended Schedule J, dated August 26, 1996, states that the insurance is $840 per month.

Corine Mann testified that she is 44 years of age and has worked at Mercy Hospital for slightly more than one year. She estimated that her annual salary is $54,000–$55,000. She does not yet have vested rights in a pension from Mercy Hospital and testified that currently, she does not have any other source of retirement income apart from the Lincoln National Annuity. She does not have any plans for retirement at this time.

---

7.  In addition, the copy provided to the Court states that it contains a copy of an amended Schedule J. However, this schedule is not attached.

Mrs. Mann testified that she does not know where the Lincoln National annuity is invested, although the debtors' response to the trustee's objection to exemptions contends that the annuity is invested in real estate and "as a result a buyer would have to be located to purchase said real estate in order for the debtors to recoup their investment into the fund." Mrs. Mann acknowledged that in April of 1996, the annuity account balance was $45,000. In 1992, she borrowed $10,000–$12,000 from the annuity to finance a pizza business. She believes that early withdrawal of the annuity would result in substantial penalties of 20%–30%.

Mrs. Mann stated that her mortgage payment is now actually some $400 per month because she is behind in her payments.

Mrs. Mann further testified that she had recently seen a doctor for a medical problem which she described as "nerve damage in her face." She stated that the extent and duration of any damage was unknown, and the doctor simply advised her to come back in six months for another office visit.

Neither the debtors nor the trustee offered documentation of the debtors' expenses or the terms of the annuity at issue.

At the close of the hearing, the Court ordered the debtors to file amended schedules by September 11, 1996, which would accurately reflect their financial circumstances and their testimony at the hearing.

### B. *Second Amended Schedules*

On September 11, 1996, the debtors filed a second amendment to schedules, amending the Summary of Schedules, Schedule B, and Schedule J. On Schedule B, personal property, the debtors listed a revised description of the Lincoln National Insurance Co. annuity, describing it as property of Mrs. Mann with a value of $45,081.15 subject to an outstanding loan of $5,211.44, and "20% tax and 10% penalty." The current market value of the annuity was estimated at $39,879.71. The debtors also amended Schedule B to include Mr. Mann's pension estimated at $26,000 per year.

The debtors' second amended Schedule J, listing current expenses, was extensively revised and not all of the revisions conformed to the debtors' testimony at the evidentiary hearing. The debtors' monthly home mortgage payment was amended to $384 from the original $410. The debtors' utilities were amended to $255 per month, rather than the initial $200 per month. The water and sewer payment doubled, amended to $100 per month from the $50 per month initially reported. The transportation expenses, which do not include car payments, rose in the amended schedule to $225 from the initial $175. Charitable contributions were amended to $416 per month, a significant increase from the first schedule's $60 per month. Although the initial schedule did not report any homeowner's insurance outside the home mortgage payments, the amended schedule shows $58.83 per month in homeowner's insurance. The automobile insurance in the amended schedule decreased from the initial scheduled amount of $400 per month to $198 per month. The auto payments in the amended schedule decreased slightly from the initial amount of $850 to $836.48. None of the amended schedules or summary reflect that the debtors lease their cars. The childrens' tuition, which was initially listed as $560 per month, is listed as $819 per month in the amended schedule.[8] The amended schedule listed a new expense, school lunch

---

8. The description line indicates that the tuition for one private school is $3,733 and the tuition for the other private school is $3,639. The total of these two amounts is $7,373 per year. The description line indicates that the tuition is paid over 9 months, rather than 12 months, and the $819 listed as an expense reflects what is paid during the nine months in which the debtors pay tuition. This amount, pro-rated for 9–month payments in a schedule where all other debts are pro-rated to 12 month payments, overestimates the amount of the debtors' expenses by $219 per month. Given the total amount of tuition which the debtors say they pay, the actual 12–month pro-rated expense is $614.42 for tuition. The fact that their actual payment is $819 per month for nine months is mathematically irrelevant. The directions for this schedule clearly instruct the debtors to ignore actual payment dates and to "[p]ro-rate any payments ... to show monthly rate."

for daughter, at $50 per month. This expense was not included in the initial schedule.

The total monthly expenses in the Amended Schedule J amount to $4,102.31, rather than $3,465 initially reported. The total projected monthly income from the initial Schedule I is still reflected on the amended schedule, despite the fact that the debtors testified that they made significantly more income than they reported on Schedule I. After subtracting the new total expenses from the initial $4,500 reported as net monthly income, the debtors show excess income of only $397 per month, rather than the initial excess amount of $1,035.

The debtors amended the summary of schedules to reflect $50,879.71 in personal property assets, rather than the $46,000 initially reported, for a new amended total of $85,879 in assets. These amendments do not entirely conform with the debtors' testimony at trial and do not correct all of the errors in the initial and first amended schedules which were highlighted at the evidentiary hearing.[9] Furthermore, these schedules inexplicably change the debtors' expenses yet again. Because these second amended schedules contradict the testimony of the debtors at the evidentiary hearing, the Court concludes that the debtors' testimony is not credible. To the extent that these second amended schedules raise new expenses, without explanation as to why these expenses suddenly increased from the first two schedules, the Court concludes that the new increased expenses are not credible.

## II. Parties' Contentions

The trustee objects to the debtors' exemption, taken pursuant to 11 U.S.C. § 522(d)(10)(E), for an annuity with Lincoln National Insurance Company. The trustee contends that this annuity is not reasonably necessary for the support of the debtors and, therefore, should not be exempt under § 533(d)(10)(E).

The debtors maintain that the exemption is proper and that the annuity is reasonably necessary for their support.

## III. Discussion

■ The debtors apparently assume that the annuity is part of the property of the estate.[10] The debtors seek to exempt the annuity from the estate pursuant to 11

9. The discrepancies brought out in the testimony include:

a) Mr. Mann initially disclosed that he worked for the Wayne County Mental Health Board for 12 years; Mr. Mann testified that he had worked there 18 years.

b) The schedules stated Mr. Mann's salary as $36,000, although he testified that he earns $54,000 annually.

c) Mr. Mann does not disclose a pension on any of his initial schedules, although he testified at the hearing that he should receive a pension of half his annual income.

d) The debtors' daughter, Danielle, is described as 16 years of age in the schedules, although Mr. Mann testified that Danielle is 14 years old.

e) The schedule shows mortgage expense of $410; Mr. Mann acknowledged that the mortgage payment was less.

f) The automobile insurance expense was initially scheduled as $400 per month; Mr. Mann testified that it is actually $800 per month for two vehicles.

g) The schedules disclosed Mrs. Mann's annual income as $48,180, but she testified that she earns $54,000–$55,000 per year.

h) The initial schedule valued the Lincoln National annuity at $35,000. Mrs. Mann testified that the actual amount of the account was $45,000, although she had borrowed some money from the account.

i) The debtors initially disclosed that tuition for their children cost $560 per month. Mr. Mann testified that tuition for both children was approximately $7,000 per year.

10. Filing a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, property which falls under 11 U.S.C. § 541(c)(2) is not included in the estate. Section 541(c)(2) states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The Supreme Court has held that an "ERISA-qualified plan" falls within the scope of 11 U.S.C. § 541(c)(2). Patterson v. Shumate, 504 U.S. 753, 765, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992). Although the Court did not precisely define "ERISA-qualified," retirement and/or pension plans are often governed by ERISA and are often found to be outside the property of the estate under § 541(c)(2). The debtors contend that the annuity was established through Mrs. Mann's former employment for the purpose of retirement, but have not argued that it falls out-

U.S.C. § 522(d), which states in pertinent part:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . . .

(10) The debtor's right to receive—

. . . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, *to the extent reasonably necessary for the support of the debtor and any dependent of the debtor,* unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E) (emphasis added).

"Parties in interest" may object to the claimed exemptions. Federal Rule of Bankruptcy Procedure 4003 sets forth the manner for objecting to an exemption, providing in pertinent part:

(b) **OBJECTIONS TO CLAIM OF EXEMPTIONS.** The trustee or any creditor may file objections to the claim of exemptions within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules. . . .

(c) **BURDEN OF PROOF.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

■ The trustee, as the objecting party, has the burden of producing evidence which rebuts the *prima facie* presumption that the exemption is correct. *In re Lester,* 141 B.R. 157, 161 (Bankr.S.D.Ohio 1991); *American Honda Fin. Corp. v. Cilek (In re Cilek),* 115 B.R. 974, 989 (Bankr.W.D.Wis.1990). If the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand. *See In re Baumgardner,* 160 B.R. 572, 573–74 (Bankr.S.D.Ohio 1993).

The trustee does not attack the exemption by arguing that the annuity represents a retirement payment whose "plan or contract does not qualify under §§ 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986." The only argument raised by the trustee is that $35,000 is not an amount "reasonably necessary" for the support of the debtor and/or dependents.

■ To determine whether the funds are reasonably necessary, the trustee cites the factors listed in *In re Rector,* 134 B.R. 611, 617 (Bankr.W.D.Mich.1991), which include:

1. Debtor's present and anticipated living expenses;

2. Debtor's present and anticipated income from all sources;

3. Age of the debtor and dependents;

4. Health of the debtor and dependents;

5. Debtor's ability to work and earn a living;

6. Debtor's job skills, training and education;

7. Debtor's other assets, including exempt assets;

8. Liquidity of other assets;

9. Debtor's ability to save for retirement;

10. Special needs of the debtor and dependents;

side the estate because it is an ERISA-qualified plan.

11. Debtor's financial obligations, e.g., alimony or support payments.

These factors are routinely used to determine whether funds are reasonably necessary for the support of the debtors and their dependents. *See In re Flygstad,* 56 B.R. 884, 889–90 (Bankr.N.D.Iowa 1986); *In re Herzog,* 118 B.R. 529, 532 (Bankr.N.D.Ohio 1990).

### A. *Factors 1 & 2: Present and Anticipated Living Expenses and Income*

The initial schedule J shows that the debtors' expenses per month amount to $3,465 and their net income per month is $4,500, leaving them with excess income of $1,035 each month, or $12,420 a year.

At the hearing, the debtors referred to amended schedules with increased expenses. The debtors testified that their automobile insurance expenses were actually $400 per month more than initially reported and that their children's tuition was $206 more per month than initially reported. If this testimony is true, the debtors' monthly expenses should be increased by $606, for total monthly expenses of $4,071. The debtors filed second amended schedules on September 11, 1996, which report even greater expenses. The increased expenses listed on the second amended schedules are not supported by the debtors' sworn testimony at the evidentiary hearing. These increases are not credible and will not be used by this Court in calculating the debtors' expenses.

The debtors also testified that their annual salaries were greater than initially reported on Schedule J. Testimony showed that the gross monthly income from the initial Schedule J should be increased $1,500 for Mr. Mann and $485 for Mrs. Mann.[11] After subtracting the reported deductions, the new net monthly income for Mr. Mann would be $3,500, and the new net monthly income for Mrs. Mann would be $3,000. Thus, corrected monthly income for the debtors totals $6,500, not $4,500 as initially reported. If the Court credits the debtors' testimony and finds that the expenses are $4,071 a month, the monthly excess is $2,429, or $29,148 per year. Thus, the debtors have an extensive cushion of disposable income to use toward present and anticipated living expenses.

### B. *Factors 3–6: Debtors' and Dependents' Ages and Health; The Debtors' Ability to Work and Earn a Living; and Job Skills, Training, and Education*

Mr. Mann is presently 53 years of age, and although he wishes to retire at age 55, he could continue working for another 12 years from now, until he reaches the average retirement age of 65. Mrs. Mann is presently 44 years of age, with no present plans for retirement, and will presumably work another 21 years, until she reaches age 65. Their son is 7 years old, and their daughter is 14 years old.

The debtors' children do not have any special impairments, and neither debtor testified to health problems which would impair their present ability to work. Mr. Mann has successfully retained his job for 18 years, and Mrs. Mann has worked for several different employers in her field of middle management in the health care profession. While Mrs. Mann fears that a rumored merger may eliminate middle management at her present job, the merger and any downsizing is nothing more than speculation at this point. In any event, she successfully obtained new employment in her field when downsizing occurred in her previous job.

### C. *Factors 7 & 8: Debtors' Other Assets and Their Liquidity*

The initial summary of schedules shows that the debtors claim assets of $81,000, consisting of $35,000 in real estate and $46,000 in personal property. Mr. Mann also lists a judgment in his favor for $247,156.50 as an asset.

The real estate is subject to a mortgage of $19,000, and Mrs. Mann holds equity of $16,-

---

**11.** Mr. Mann testified that he earned $54,000 annually, or $1,500 more than the gross earnings of $3,000 a month that he indicated on the initial schedules. Mrs. Mann testified that she earned $54,000–$55,000, or $485 more than the gross earnings of $4,015 a month that she indicated on schedules.

000 in the property. The debtors have only claimed a homestead exemption of $7,500, although Mrs. Mann could certainly claim as much as $15,000 in equity.[12] The personal property is comprised of $250 in cash and bank accounts; $5,000 in household furnishings; $1,000 in apparel; and the $35,000 annuity.[13] The debtors have only claimed exemptions of $4,000 for household furnishings and apparel, although it appears that they could claim exemptions of as much as $8,000.[14] Although the debtors did not list any automobiles as assets, they claimed exemptions of $1,200 for automobiles.[15] At the hearing, Mr. Mann testified that he had a pension that he had not reported as an asset. This pension was 50% of his annual income of $54,000.

If the debtors claim the entire amount of exemptions to which they should be entitled under the amended bankruptcy code, the debtors would retain all their household furnishings, all of their apparel, the remaining cash in their bank accounts, and $15,000 of the $16,000 equity in their home as assets after the discharge. This leaves the annuity and Mr. Mann's pension as the only remaining assets of the estate. Mr. Mann would presumably allege that his pension was exempt under 11 U.S.C. § 522(d)(10)(E), leaving Mrs. Mann's annuity, which the debtors argue is also exempt.

### D. Factors 9–11: Debtors' Ability to Save for Retirement; Special Needs; and Financial Obligations

If the debtors work until age 65, the average age of retirement, Mr. Mann will be able to work for another 12 years and Mrs. Mann will be able to work for another 21 years. If Mr. Mann continues to earn his present salary of $54,000 per year, he would earn $648,000 before retirement at 65. If Mrs. Mann continues to earn her present salary of $54,000, she will earn $1,134,000 before retirement. At the present time, the debtors' income exceeds their reported expenses by $2,429 a month, or $29,148 per year. If the debtors retain their current salaries until Mr. Mann retires at age 65, this would amount to an excess of $349,776 upon Mr. Mann's retirement.

There is no evidence that the debtors anticipate any special needs, other than the cost of helping their children attend college. No specific testimony about college expenses was presented, but the excess disposable income that should be generated over the next twelve years should be able to help with tuition and still provide a cushion of savings for the debtors.

### IV. Conclusion

The facts show that the annuity is not a reasonable necessity for the support of the debtors, the requirement for claiming it as exempt under 11 U.S.C. § 522(d)(10)(E). The debtors' assertions to the contrary are not supported by the evidence. The debtors' second amended schedules are not credible in light of the debtors' testimony at the evidentiary hearing and in light of the fact that they still do not reflect all of the assets which the debtors' testimony shows that they possess.

---

12. The homestead exemption is made pursuant to 11 U.S.C. § 522(d)(1), which was amended in 1994 to allow the debtors to exempt up to $15,000 of their aggregate interest in their residence. Although the equity in the home appears to be $16,000, they only exempted $7,500, the maximum amount allowed before the amendment.

13. These items total only $41,250, not the $46,000 stated on the summary of schedules.

14. The exemption for household furnishings is taken pursuant to 11 U.S.C. § 522(d)(3), which was amended 1994 to allow up to $8,000 exemption "in aggregate value, in household furnishings, household goods, wearing apparel ... that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." Although the debtors chose to exempt only $3,000 for household furnishings, Schedule B described $5,000 in household furnishings. The debtors could have taken the entire $5,000 for furnishings, as well as the $1,000 for apparel, under the amended statute.

15. This exemption is claimed pursuant to 11 U.S.C. § 522(d)((2), which allows exemption of "[t]he debtor's interest, not to exceed $2,400 in value, in one motor vehicle." Prior to the 1994 amendment, the maximum exemption was $1,200, the amount the debtors claimed. The debtors listed a monthly expense of $850 for automobile payments, although they did not list any automobile loans or automobile leases as debts.

Accordingly, the Court concludes that the trustee's objection is sustained and the annuity is deemed property of the estate which is not subject to exemption.

The circumstances of this bankruptcy case compel the Court to determine whether further extraordinary action should be taken, such as: (a) imposing sanctions under Rule 9011, Fed.R.Civ.P.; (b) examining counsel's fee under Rule 2017; Fed.R.Bankr.P.; (c) denying the debtors' discharge under 11 U.S.C. § 727; or any other appropriate action. The Court will set a hearing on these matters.

Appropriate orders will be entered herewith.