**In re Jesse Douglas DUNN, Debtor.**

**Bankruptcy No. 96–52985–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Nov. 12, 1997.

individual for the benefit of that individual is not enforceable in bankruptcy because the restriction is not enforceable under applicable law. The issue in this case is whether the result should be different when the trust is created by the debtor's employer, but is still fully funded through voluntary contributions by the debtor. The Court concludes that the result should not be different, and that therefore the debtor's beneficial interest in the Annuity Savings Plan administered by the debtor's employer is not excluded from the estate under 11 U.S.C. § 541(c)(2).

The Court further concludes that the debtor's exemption of this interest under 11 U.S.C. § 522(d)(10)(E) should be disallowed to the extent that the debtor's interest is needed to pay the claims against the estate and the administrative expenses, because that amount is not necessary for the debtor's support.

### I. *Introduction*

Jesse Douglas Dunn, the debtor, is employed by the City of Detroit and is a participant in the General Retirement System of the City of Detroit (GRS). The GRS was created by amendment to the 1919 City Charter. Dunn participates in two separate plans established by the GRS. The Defined Benefit Plan is funded exclusively by the City.[1] Dunn also participates in the Defined Contribution Plan (also known as the Annuity Savings Plan), which is funded exclusively through voluntary employee contributions.

There are no traditional plan documents for the plans. Rather, the plans consist of a compilation of various provisions of the 1974 and 1997 City of Detroit Charter. (Defendant's exhibit 23.)[2] The City of Detroit Charter defines the Annuity Savings Plan (the Plan) as follows:

Sec.1. Annuity Savings Fund.

(a) The Annuity Savings Fund shall be the fund in which shall be accumulated at regular interest the normal contributions of members to provide their normal annuities and the additional contributions of mem-

Robert Reed, Detroit, MI, for Debtor.

Samuel Sweet, Troy, MI, Elias Majoros, Southfield, MI, for trustee.

### *OPINION*

STEVEN W. RHODES, Chief Judge.

A restriction on the transfer of an interest in a trust that is created and funded by an

---

1. The trustee concedes that the Defined Benefit Plan is not property of the bankruptcy estate.

2. The trustee's exhibits were labelled Defendant's exhibits, and are referred to as Defendant's exhibits in this opinion.

bers to provide their additional annuities. From and after September 2, 1966, the normal contributions of a member to the retirement system shall be the sum of three per cent of the amount of his annual compensation that may be subject to taxation under the provisions of the Federal Insurance Contribution Act plus five per cent of the portion of his annual compensation, if any, which exceeds the amount of his annual compensation that may be subject to taxation under the provisions of the Federal Insurance contributions Act.

(Defendant's exhibit 23B.)

In an informational pamphlet provided to employees, the GRS describes the Annuity Savings Plan as "an optional program . . . which can be used to enhance . . . retirement . . . funded by employee contributions and earnings from the assets of the System." (Questions and Answers on the General Retirement System of the City of Detroit, p. 11; Defendant's exhibit 9.)

Dunn has made voluntary contributions to the Annuity Savings Plan during his employment with the City. According to a statement of benefits dated June 30, 1996, Dunn has accumulated $105,407 in this Plan.

Dunn will be eligible for a lump sum distribution from the Plan in November 1997, upon completion of twenty-five years of service. Dunn would also be eligible to receive a distribution upon death, termination of employment, or on the basis of a disability retirement. The Annuity Savings Plan has an anti-alienation provision, as required for favorable tax treatment under 26 U.S.C. § 401(a).

On September 30, 1996, Dunn filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In Schedule E, Dunn disclosed unsecured debts of $25,011.82. In his original Schedule B, Dunn disclosed his interest in the Annuity Savings Plan of the General Retirement Systems of the City of Detroit. In Schedule C, Dunn exempted the value of the Annuity Savings Plan under § 522(d)(10)(E).

The Trustee filed an objection to this exemption, arguing that the entire amount of Dunn's interest in the Annuity Savings Plan was not reasonably necessary for Dunn's support. Dunn later amended Schedule B and asserted that the value of the Annuity Savings Plan was "one dollar or more amount undetermined." He also amended Schedule C to exclude his interest in the Annuity Savings Plan under § 541(c)(2).

In response to Dunn's claim that his interest in the Plan is not property of the estate, the trustee makes three arguments. First, the trustee argues that the Plan is not a trust as required by § 541(c)(2). Second, he argues that the transfer restriction in the Plan is not enforceable under non-bankruptcy law as required by § 541(c)(2). Third, he argues that the administrators of the Plan have waived the transfer restriction by regularly recognizing and honoring security interests asserted by the Detroit Municipal Credit Union.[3]

The issues are whether Dunn's interest in the Annuity Savings Plan is property of the estate and whether Dunn's exemption of that interest should be allowed. As noted, the Court concludes that the interest is property of the estate and that the exemption should be disallowed.

## II. Dunn's Interest in the Annuity Savings Plan Is Property of the Bankruptcy Estate.

The filing of a bankruptcy petition creates an estate comprised of all of the debtor's legal or equitable interests in property. 11 U.S.C. § 541(a)(1). However, certain property is excluded from the bankruptcy estate under § 541(c), which provides:

### § 541. Property of the estate.

(c) (1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section not withstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

. . . .

---

**3.** In light of the Court's resolution of the first two arguments, it is not necessary to address the third.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(1) & (2).

■ This provision "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). The determination of whether Dunn's interest in the Plan is property of the bankruptcy estate requires a three step analysis. First, the Court must determine whether Dunn's interest in the Plan is a beneficial interest in a "trust." Second, the Court must determine whether there is a restriction on the transfer of Dunn's interest in the Plan. Third, the Court must determine whether that restriction is enforceable under either federal or state law. *Id.* For the reasons set forth below, the Court concludes that although the Annuity Savings Plan is a trust and does have a restriction on transfer, that restriction is not enforceable under either federal or state law. Accordingly, the Court concludes that Dunn's interest in the Plan is not excluded from the bankruptcy estate under § 541(c)(2).

## A. The Annuity Savings Plan Funds Are Held in Trust by the GRS.

The trustee argues that the Annuity Savings Plan funds are not held in trust, and therefore are included in the bankruptcy estate because § 541(c)(2) requires a trust. The trustee notes that the Plan documents do not have language that explicitly creates a trust.

■ Black's Law Dictionary defines a trust as "[a]ny arrangement whereby property is transferred with the intention that it be administered by trustee for another's benefit." Black's Law Dictionary (6th Ed.1990) (citations omitted). "No particular form of words is necessary for the creation of a spendthrift trust." RESTATEMENT (SECOND) TRUSTS § 152, cmt. c. (1957).

■ In the present case, although the word "trust" does not appear in the Plan itself, the Court concludes that the funds are held in trust by the GRS. The administrators of the Plan are referred to as "trustees." Employees contribute money to the Plan with the intention that it be administered by the trustees for the benefit of the participants under the terms of the Plan. The contributed funds are clearly the *res* of the trust.

## B. The Anti-Alienation Provision of the Plan Is a Restriction Against Transfer.

The Annuity Savings Plan contains an anti-alienation provision. Title 9, Chapter 6, Article 9, Section 1 of the 1994 Charter provides as follows:

Sec. Assignments prohibited.

The right of a person to a pension, annuity, or a retirement allowance, to the return of accumulated contributions, the pension, annuity or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this chapter and the moneys in the various funds of the retirement system shall be unassignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever, except as specifically provided in this chapter. (As amended September 1, 1961. In effect September 15, 1964.)

However, the issue remains whether the restriction is enforceable under nonbankruptcy law. The Plan is excluded from the bankruptcy estate under § 541(c)(2) only if the restriction is enforceable under federal or state law.

## C. The Transfer Restriction in the Annuity Savings Plan Is Not Enforceable under Federal Nonbankruptcy Law.

For different reasons, neither the I.R.C. nor ERISA provides for the enforcement of the transfer restrictions of the Annuity Savings Plan.

### 1. *ERISA*

■ In the present case, the Plan is not subject to ERISA because it is a governmen-

tal plan. *See* 29 U.S.C. § 1002(32), § 1003. In *Shumate,* the Supreme Court stated:

> [P]ension plans established by governmental entities and churches need not comply with Subchapter I of ERISA, including the antialienation requirement of § 206(d)(1).... Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law" that interest nevertheless could be exempted under § 522(d)(10)(E).

504 U.S. at 762–63, 112 S.Ct. at 2249.

Accordingly, ERISA does not apply here.

### 2. *I.R.C.*

26 U.S.C. § 401(a)(13)(A) provides in part, "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13)(A). On March 5, 1997, the IRS issued a favorable determination letter stating that the Plan is qualified under § 401(a). (Defendant's exhibit 23a.) The issue is whether I.R.C. § 401(a) provides for the enforcement of the required transfer restriction.

In *Shumate,* the Supreme Court called I.R.C. § 401(a) the coordinate to ERISA's anti-alienation requirement. 504 U.S. at 759, 112 S.Ct. at 2247. *See* 29 U.S.C. § 1056(d)(1). *See also In re Witwer,* 148 B.R. 930, 936–37 (Bankr.C.D.Cal.1992), *aff'd,* 163 B.R. 614 (9th Cir. BAP 1994). The Supreme Court held that the ERISA provision creates an enforceable restriction against transfer. *Shumate,* 504 U.S. at 759, 112 S.Ct. at 2247.

Prior to the Supreme Court's decision in *Shumate,* there was a split among the circuits whether "nonbankruptcy law" as referred to in § 541(c) was limited to state law regarding spendthrift trusts. *Id.* at 757, 112 S.Ct. at 2246. The Supreme Court held that "[t]he text of § 541(c)(2) does not support [the] contention that 'applicable nonbankruptcy law' is limited to state law. Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law, such as ERISA." *Id.* at 759, 112 S.Ct. at 2247.

In *Shumate,* the Supreme Court further held that a plan that is ERISA qualified is excluded from the bankruptcy estate without regard to state spendthrift trust law, because ERISA provides for enforcement of the required transfer restriction. *Id.* at 760, 112 S.Ct. at 2248.

Several cases have addressed whether I.R.C. § 401(a) itself enforces the transfer restriction when the plan is not ERISA qualified. *Witwer,* 148 B.R. at 936–37. *See also In re Copulos,* 210 B.R. 61, 64 (Bankr.D.N.J. 1997); *Kaler v. Craig (In re Craig),* 204 B.R. 756 (D.N.D.1997); *In re Leamon,* 121 B.R. 974 (Bankr.E.D.Tenn.1990). Most courts have held that an anti-alienation clause which is sufficient to qualify under I.R.C. § 401(a) does not operate to exclude the plan from the bankruptcy estate unless the plan is also "ERISA qualified" or qualifies as a spendthrift trust under state law. *See In re Kellogg,* 179 B.R. 379, 388 (Bankr.D.Mass.1995); *In re Acosta,* 182 B.R. 561 (N.D.Cal.1994); *Witwer,* 148 B.R. 930, 936–37. *See also* 5 *Collier on Bankruptcy* ¶ 541.25, at 541–82 (Lawrence P. King 15th ed.1997).

In *Witwer,* the debtor argued that *Shumate* supports the argument that I.R.C. § 401(a) itself enforces a transfer restriction in a plan, noting the Supreme Court's holding "that there is no limitation relating to the source of law contained in § 541(c)(2) and any federal law providing an anti-alienation provision that is enforceable must be respected by the bankruptcy code." *Witwer,* 148 B.R. at 936. However, the court in *Witwer* noted that the debtor had provided no statutory authority or case law to support this expansive reading of *Shumate.* The court then held that although a restriction can be enforced through ERISA, there is no enforcement mechanism under the I.R.C. In support, the court noted that

> [u]nder ERISA a plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. The "coordinate section" of the I.R.C., however does not provide a similar remedy.

*Witwer,* 148 B.R. at 937 (quoting 29 U.S.C. §§ 1132(a)(3), (a)(5)). The court further stated, "I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce." *Id.* (citing *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.1975), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Cowan v. Keystone Employee Profit Sharing Fund,* 586 F.2d 888, 890 (1st Cir.1978); *Reklau v. Merchants Nat'l Corp.,* 808 F.2d 628 (7th Cir.1986)). *See also In re Wheat,* 149 B.R. 1003, 1007 (Bankr.S.D.Fla. 1992). The court concluded that because the restriction could not be enforced through the I.R.C., qualification under the I.R.C. alone was not sufficient to exclude the plan from property of the estate. *Witwer,* 148 B.R. at 937. This Court finds that *Witwer* and the other cases that reach this result are persuasive. *See also S.E.C. v. Johnston,* 922 F.Supp. 1220, 1225 (E.D.Mich.1996) (quoting *Witwer* with approval).

▮ However, a minority of courts have determined that a plan is not property of the estate solely on the basis of qualification under I.R.C. § 401(a). Recently in *In re Copulos,* the plan was excluded from the bankruptcy estate because a New Jersey statute provides that a plan that meets the requirements of the I.R.C. is enforceable as a spendthrift trust. *Copulos,* 210 B.R. 61; N.J.S.A. 25:2–1(b). The court recognized that there is "substantial debate" on whether a plan must be both ERISA qualified and tax qualified to be excluded from the estate. *Copulos,* 210 B.R. at 63, n. 1. However, the court in *Copulos* was not required to determine whether the plan qualified under federal law because the New Jersey statute makes a plan enforceable as a spendthrift trust if the I.R.S. has made a determination that the plan is a qualifying trust under provisions of the I.R.C. Therefore, *Copulos* is distinguishable from the present case. Michigan does not have a statute that enforces a transfer restriction in a plan merely because it complies with I.R.C. § 401(a).[4]

4. By statute in Michigan, a debtor's interest in a pension plan is exempt from creditors' claims if the plan complies with both I.R.C. § 401 and

*Leamon* is another case holding that qualification under I.R.C. § 401(a) meets the requirements of § 541(c)(2), even though the plan is not subject to ERISA. In determining that the restriction against transfer in the anti-alienation clause is enforceable through the I.R.C., the court in *Leamon* relied on the Sixth Circuit's reasoning in *United Metal Prod. Corp. v. Nat'l Bank of Detroit,* 811 F.2d 297 (6th Cir.1987) and *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980). *Leamon,* 121 B.R. at 981–82. Those cases "held that pension or profit sharing plan benefits were not subject to garnishment." *United Metal Prod. Corp,* 811 F.2d at 299 (citing *Buha,* 623 F.2d at 463). However, unlike the present case, the plans in both of those cases were also subject to ERISA. The Sixth Circuit did not address whether the restriction would have been enforceable through the I.R.C. without ERISA. The court in *Leamon* did not address this distinction or explain how the restriction could be enforced through the I.R.C. without ERISA, but simply assumed that it could be.

Accordingly, the Court concludes that neither *Copulos* or *Leamon* is persuasive that qualification under the I.R.C. alone is sufficient to determine that a transfer restriction is enforceable under nonbankruptcy law.

▮ Therefore, the Court finds that I.R.C. § 401(a) provides no enforcement for the transfer restriction in the Annuity Savings Plan. Moreover, because the Plan is not subject to ERISA, the transfer restriction in the Plan cannot be enforced under ERISA. The transfer restriction is thus not enforceable under any federal nonbankruptcy law.

Therefore, the Court must determine whether the Annuity Savings Plan is an enforceable spendthrift trust under Michigan law. If it is not, then the Plan is not excluded from the estate under § 541(c)(2).

**D. The Transfer Restriction in the Annuity Savings Plan Is Not Enforceable Under State Law as a Spendthrift Trust.**

▮ Under Michigan law a spendthrift trust is:

ERISA. MICH. COMP. LAWS ANN. § 600.6023(1)(*l* ) (West Supp.1997). As noted, ERISA does not apply to the Annuity Savings Plan.

[O]ne created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts.

*Fornell v. Fornell Equip., Inc.*, 390 Mich. 540, 548, 213 N.W.2d 172 (1973).

As a general rule, "spendthrift trusts for the benefit of the settlor are invalid." 76 Am.Jur.2d, Trusts § 129 (1992). *See Fornell*, 390 Mich. 540, 213 N.W.2d 172; *In re Kincaid*, 917 F.2d 1162 (9th Cir.1990); *In re Cassada*, 86 B.R. 541 (Bankr.E.D.Tenn. 1988). "A person cannot create a spendthrift trust for himself which shall be effective against the rights of his subsequent creditors." E. Griswold, *Spendthrift Trusts*, 405–06 (1936) (footnote omitted). "There is substantial authority for the proposition that anti-alienation provisions in employee benefit plans are unenforceable under state law to the extent that the plan is funded by voluntary employee contributions, on the theory that the plan is in essence self-settled." *In re Idalski*, 123 B.R. 222, 233 (Bankr. E.D.Mich.1991) (collecting cases). *See also* 76 Am.Jur.2d § 129, 9 Am.Jur.2d Bankruptcy § 1013 (1991); RESTATEMENT (SECOND) TRUSTS, § 156 Reporter's Notes, cmt. f. (1959 App.) ("If a person furnishes the consideration for the creation of a trust, he is the settlor."); *McColgan v. Walter Magee, Inc.*, 172 Cal. 182, 155 P. 995 (1916); *Security Trust Co. v. Sharp*, 77 A.2d 543 (Del.Ch.1950) (citing RESTATEMENT OF TRUSTS, § 156); *Morgan v. Fiduciary Trust Co. of New York*, 290 N.Y. 615, 48 N.E.2d 710 (1943); *State ex rel. v. Nashville Trust Co.*, 28 Tenn.App. 388, 190 S.W.2d 785 (1944) (citing RESTATEMENT OF TRUSTS, § 156); *Estate of Boyle*, 271 Wis. 323, 73 N.W.2d 425 (1955).[5]

Under this authority, the Court must conclude that the transfer restriction in the Annuity Savings Plan is not enforceable under Michigan law because the Plan is functionally a self-settled spendthrift trust.

In *Kincaid*, the court held that an employee's voluntary contributions to a pension plan trust established by his employer do not make the trust self-settled, because the employee does not actually receive or control the funds used for the contribution. 917 F.2d 1162, 1167. Rather, in the court's analysis, the employee actually contracts for a lower salary and gives up the right to the difference, which the employer then contributes to the plan from its own funds. *Id.* This Court rejects that analysis, as the form of transaction that it characterizes is a fiction. When Dunn voluntarily directs the City to contribute his wages to the Annuity Savings Plan, it is Dunn, not the City, that funds the Plan. Those wages would otherwise be available to satisfy his creditors' claims. Thus, the Plan is a self-settled trust and is ineffective against Dunn's creditors.

There is further evidence of Dunn's control over his interest in the Plan. On at least two occasions Dunn borrowed money from the Detroit Municipal Credit Union using that interest as collateral. On January 31, 1991, Dunn borrowed money and signed a "Security Agreement Pledge and Assignment Re: Annuity Savings Fund," which stated, "I, Jesse Dunn, ("Debtor") do hereby pledge, assign, convey, transfer and grant a security interest to the Detroit Municipal Credit Union ("Secured Party") of my annuity savings fund amounts...." (Defendant's exhibit 12D.) On January 31, 1995, Dunn borrowed additional money and signed a "Security Agreement, Pledge and Assignment Re: Defined Contribution Plan (Annuity Savings Fund)," which stated,

I, Jesse D. Dunn, ("Debtor") ... do hereby pledge, assign, convey, transfer and grant a security interest to the Detroit Municipal Credit Union ("Secured Party") of the proceeds of my Defined Contribution Plan, also known as my annuity savings fund amounts (commonly referred to

---

5. The Court notes that the Michigan courts have relied on the RESTATEMENT (SECOND) OF TRUSTS in interpreting Michigan law in this area. *See, e.g., Roy v. Comerica Bank–Detroit*, 425 Mich. 364, 389 N.W.2d 696 (1986); *Preminger v. Union Bank & Trust Co., N.A.*, 54 Mich.App. 361, 220 N.W.2d 795 (1974).

as a refund of proceeds of defined contribution plan)....[6]

(Defendant's exhibit 12C.)

Both of these security agreements also included language authorizing the GRS to pay the distribution from Dunn's Annuity Savings Plan directly to the credit union in enforcement of its security interest. The evidence established that the GRS regularly honors such authorizations by repaying the credit union from lump-sum distributions. Indeed, this arrangement is carried out even when the employee has obtained a discharge in bankruptcy. This evidence establishes that both Dunn and his creditors rely upon this asset in their loan transactions.

The practical result of the arrangements among Dunn, the Detroit Municipal Credit Union and the GRS is that Dunn can obtain distributions of Plan funds at any time, regardless of the Plan provisions regarding distribution.[7] Thus Dunn has significant control over this asset and that control weighs strongly against the enforceability of the transfer restriction in the Plan. 76 AM. JUR. 2D *Trusts* § 122 (1992).

The distinction between unenforceable self-settled trusts and enforceable spendthrift trusts is well-illustrated in *Jacobs v. Shields,* 116 B.R. 134 (D.Minn.1990). There, the court, applying Michigan law, found that a pension plan established by Ford Motor Co. was an enforceable spendthrift trust, relying upon the following factors: 1) the plan was funded exclusively by Ford; 2) the funds were held in trust; 3) Ford appointed the trustee; 4) the plan was administered by an administrative board; 5) the debtor would receive monthly payments only upon retirement; 6) there was no provision for hardship withdrawals, loans, or distribution upon termination of employment; and 7) the plan prohibited alienation of benefits. *Id.* at 138.

The Ford plan at issue in *Jacobs* is similar to Dunn's Defined Benefit Plan; both are funded by the employer. On the other hand, the Annuity Savings Plan in this case is funded exclusively by the employees. Because the Annuity Savings Plan is self-settled by its beneficiaries, it is not a valid spendthrift trust under Michigan state law.

Accordingly, the transfer restriction in the Annuity Savings Plan is not enforceable under either federal or state law. Therefore the Plan is not excluded from property of the bankruptcy estate under § 541(c)(2).

The Court will now consider Dunn's alternative argument that his interest in the Annuity Savings Plan is exempt under 522(d)(10)(E).

**III. *To the Extent Needed to Pay Claims And Expenses of Administration. Dunn's Interest in the Annuity Savings Plan Is Not Exempt from the Bankruptcy Estate Under § 522(d)(10)(E).***

Dunn argues that even if the Annuity Savings Plan is property of the bankruptcy estate, it is exempt under § 522(d)(10)(E), which provides:

The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the

---

**6.** Apparently, sometime between the dates of these two Security Agreements, the Detroit Municipal Credit Union changed the form from granting a security interest in the Plan itself to granting a security interest in the proceeds of the Plan. This is curious, as legally a creditor cannot obtain a security interest in future proceeds unless the creditor also has a security interest in the underlying property. *See* MICH. COMP LAWS ANN. § 440.9203(1)(c) (West 1994) ("[A] security interest is not enforceable ... unless ... [t]he debtor

has rights in the collateral.") MICH. COMP. LAWS ANN. § 440.9306(1) (West 1994) (" 'Proceeds' includes whatever is received upon .... disposition of collateral....").

**7.** That both the City of Detroit General Retirement System and the Detroit Municipal Credit Union have chosen to be represented by the same attorney on these matters sheds further light on the nature of their relationship.

time the debtor's rights under such plan or contract arose;

    (ii) such payment is on account of age or length of service; and

    (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

The trustee filed a timely objection to the exemption asserting that Dunn's interest in the Annuity Savings Plan ($105,470) is not reasonably necessary for his support, and that if that property is used to pay Dunn's debts (approximately $26,000 plus interest and administrative expenses of $10,000), Dunn will still have sufficient retirement savings to meet his reasonable support needs.

■■■■■ "The trustee, as the objecting party, has the burden of producing evidence which rebuts the prima facie presumption that the exemption is correct." *In re Mann,* 201 B.R. 910, 915 (Bankr.E.D.Mich.1996) (citing *In re Lester,* 141 B.R. 157, 161 (S.D.Ohio 1991); *In re Cilek,* 115 B.R. 974, 989 (Bankr. W.D.Wis.1990)). "If the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *Id.;* see also *In re Baumgardner,* 160 B.R. 572, 574 (Bankr.S.D.Ohio 1993).

■■■ Courts consider eleven factors to determine whether funds are reasonably necessary for the support of debtors and their dependents. *Mann,* 201 B.R. at 916. The factors are:

1. Debtor's present and anticipated living expenses;

2. Debtor's present and anticipated income from all sources;

3. Age of the debtor and dependents;

4. Health of the debtor and dependents;

5. Debtor's ability to work and earn a living;

6. Debtor's job skills, training, and education;

7. Debtor's other assets, including exempt assets;

8. Liquidity of other assets;

9. Debtor's ability to save for retirement;

10. Special needs of the debtor and dependents; and

11. Debtor's financial obligations, e.g., alimony or support payments.

*Id.* at 915 (quoting *In re Rector,* 134 B.R. 611, 617 (Bankr.W.D.Mich.1991)).

## A. Factors 1 & 2—Present and Anticipated Living Expenses and Income; Factor 11—Alimony or Child Support.

■■■ Schedule I discloses that presently, Dunn's monthly net income is $1,921.42. Schedule J discloses that the total of his monthly expenses is $2,017.68.

Dunn testified that although he currently pays only $200 per month in rent, he anticipates that this amount will increase because he desires to move out of his mother's home. Dunn further testified that this move would result in increased rent and utilities costs.

On cross-examination, Dunn testified that he was a partial owner in the home where he currently resides. However, Dunn stated that although his name is listed on the deed, along with his mother and two brothers, everyone considers that the house belongs to his mother. (Transcript of June 17, 1997 hearing at 56, 63.) This ownership interest was not disclosed on Dunn's schedules.

One of the expenses listed is a child support obligation of $775.68 per month. The divorce judgment requires Dunn to pay child support until each child "attains the age eighteen (18), graduates from high school, whichever is later, but in no event after the child attains the age of 19½ years." (Defendant's exhibit 7 at 4.) The child support costs are fixed, but will diminish as the children get older. The oldest child is currently 18. Dunn's child support obligation to this child will end very shortly. Dunn's other children are 16, 14, and 13. According to the terms of the divorce judgment, all of Dunn's child support obligations will end within 7 years.

The evidence indicates that Dunn does not currently have a cushion of disposable income. Although Dunn does not currently have any disposable income, he will have increasing disposable income as his child support obligations diminish.

## B. Factors 3–6—Age and Health; Ability to Work and Earn a Living; and Job Skills, Training, and Education

Dunn is presently 50 years old. In his current condition, he can continue working another 15 years until the usual retirement age of 65. Dunn testified that although he anticipates retiring "at some point," he does not anticipate retiring before he attains at least 30 years of service. (Transcript of June 17, 1997 hearing at 32.) Dunn will have 30 years of service in November, 2002.

Dunn testified that he has been diagnosed with multiple sclerosis, which has the potential to interfere with his plans to continue working. (Transcript of June 17, 1997 hearing at 34.) However, Dunn did not produce any evidence corroborating his testimony regarding the diagnosis or anticipated effect the disease would have on his lifestyle or abilities. The trustee did not produce any evidence to rebut Dunn's diagnosis. On cross-examination, Dunn testified that while performing his job, he compensates for the symptoms, but "would never tell [his] employer" that the disease was interfering with his job. (Transcript of June 17, 1997 hearing at 61.)

Dunn has a bachelor's degree in general studies. He also has specialized medical training in emergency medicine and orthotics. Dunn took the board examination for certification in orthotics, but is not board certified. (Transcript of June 17, 1997 hearing at 42.)

These factors indicate that Dunn currently has the ability to remain employed. There is no evidence that Dunn would not be able to continue to work for 5–15 more years, which would allow him to save more money and retire with greater benefits.

## C. Factors 7—11—Other Assets; Liquidity; Ability to Save for Retirement; and Special Needs

The amended Summary of Schedules shows that Dunn claims assets of $801. The trustee asserts that the schedules do not disclose all of Dunn's assets. The trustee introduced documentation of an undisclosed share account at the Detroit Municipal Credit Union (Defendant's exhibit 14.) Dunn's only response to the trustee's assertion that he failed to disclose this asset was to point out that the share account had a balance of only $14.54. (Transcript of June 17, 1997 hearing at 62.) As previously discussed, Dunn also did not disclose his ownership interest in 3128 Deacon, Detroit, which he considers to be his mother's home. The schedules list the pension plans as an undetermined amount.

As noted, the statement of benefits provided by the GRS indicates that as of June 30, 1996 Dunn had accumulated $105,407 in the Annuity Savings Plan. The benefit statement indicates that based on the Defined Benefit Plan, as of June 30, 1996, Dunn is entitled to $1,296 per month in retirement benefits, and that Dunn would be entitled to $2,099 per month if he continues working and retires at age 62. Dunn will retain his entire interest in the Defined Benefit Plan. These figures do not include benefits expected from the Annuity Savings Plan.

If Dunn retires after 30 years of service, his retirement benefits will include medical insurance coverage for himself and his dependents. (Transcript of June 17, 1997 at 32.) Furthermore, Dunn testified that he is entitled to some veteran benefits. (Transcript of June 17, 1997 hearing at 58–59.)

These factors strongly suggest that Dunn does not need his Annuity Savings Plan for his support, and the Court so finds. The trustee states that he "seeks to recover and administer only $26,185.66 for creditors plus interest and Chapter 7 administrative expenses estimated at $10,000.00, assuming no further litigation."[8] (Trustee's Trial Brief at 11.) This will leave in Dunn's Annuity Savings Plan approximately $70,000 plus the contributions he makes post-petition until he retires.

---

8. It is not clear where the amount for creditors as stated by the trustee, $26,185.66, comes from. As noted, Schedule E discloses $25,011.82 in unsecured debt. However, the difference is insignificant for present purposes.

### IV. *Conclusion*

For the reasons stated above, this Court holds that Dunn's interest in the Annuity Savings Plan of the City of Detroit is property of the bankruptcy estate and is not excluded under 11 U.S.C. § 541(c)(2). The Court further disallows Dunn's exemption of his interest in the Annuity Savings Plan under § 522(d)(10)(E) to the extent needed by the estate to pay claims and administrative expenses. The Court will enter an appropriate order.