### In re Jirimiah CONKLE, J. Dolly Conkle, Debtors.

#### No. 01–61716.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 27, 2002.

Grady L. Pettigrew, Jr., Cox, Stein & Pettigrew Co., L.P.A., Columbus, OH, for Debtors.

Susan L. Rhiel, Rhiel & Terlecky Co., LPA, Columbus, OH, Chapter 7 Trustee.

## OPINION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPT PROPERTY

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the trustee's objection to the debtors' claim of exemption in a certain tax deferred annuity with ING Aetna. The debtors opposed the trustee's objection. On January 8, 2002, the Court held a hearing on the issue of whether the annuity, or any portion thereof, was reasonably necessary for the debtors' support.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(B).

The parties do not dispute that the annuity is property of the bankruptcy estate for which the debtors may assert a claim of exemption under Ohio Revised Code § 2329.66(A)(10)(b). This provision exempts "the person's right to receive payment under any pension, annuity, or similar plan or contract ... on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents ..."

■ The factors to be considered in determining whether the annuity is reasonably necessary for the support of the debtors include:

1. Debtors' present and anticipated living expenses;

2. Debtors' present and anticipated income from all sources;

3. Age of the debtors and dependents;

4. Health of the debtors and dependents;

5. Debtors' ability to work and earn a living;

6. Debtors' job skills, training, and education

7. Debtors' other assets, including exempt assets;

8. Liquidity of other assets;

9. Debtors' ability to save for retirement;

10. Special needs of the debtors and dependents;

11. Debtors' financial obligations, e.g., alimony or support payments.

*In re Mann,* 201 B.R. 910, 915–16 (Bankr. E.D.Mich.1996).

■ J. Dolly Conkle, one of the debtors herein, testified that their current household expenses approximate $4,000 per month. Their current monthly mortgage payment, including homeowners' insurance and real estate taxes is $937. The debtors have lived in their residence for eighteen years and expect to refinance their mortgage in order to pay the non-exempt equity in their home to the trustee. Mrs. Conkle anticipates a larger mortgage payment as a result of the refinancing, but did not offer an opinion as to what the new payment might be.

The $4,000 also includes $130 for home maintenance, $300 for recreation clubs and entertainment, $200 for transportation, $409 for life insurance, $500 for a Chevrolet Blazer, and $474 for a Marriott vacation club obligation. These items total more than one-half of the debtors' projected expenses.

In examining these itemizations, the Court is unable to determine what costs enter into the $130 home maintenance expense. As for the $300 recreation expense, Mrs. Conkle testified that it includ-

ed lunch at work and perhaps parking fees. She also testified that the $200 transportation expense contemplated her husband's activities as a land surveyor throughout the State of Ohio. She acknowledged, however, that he was not working as a surveyor either on the date of filing or the date of this hearing.

The $409 life insurance expense is curious as the debtors have no other dependents. This cost may have arisen when her husband was operating his land surveying business. Given that his company is no longer in operation, the item is questionable, at best, as a reasonable expense of the debtors.

The debtors decided not to reaffirm their automobile loan with Huntington National Bank and have surrendered the Chevrolet Blazer. Therefore, the $500 payment is no longer an expense.

The debtors did intend to reaffirm their obligation for the Marriott Vacation Club. However, even aside from the reasonableness of this expense, it appears that the debtors executed their reaffirmation agreement after the issuance of their discharge. Thus, under Section 524(c)(1) of the Bankruptcy Code, the agreement is not enforceable.

Mrs. Conkle currently earns a gross income of approximately $3,500 per month. Mr. Conkle is presently unemployed, but is actively seeking employment. The debtors have no other sources of income at this time and have not indicated that Mrs. Conkle would cash in any portion of her annuity to meet current expenses.

Mrs. Conkle is sixty years old and has a life expectancy of twenty-one more years according to the tables offered by the debtors from the National Center for Health Statistics. Mr. Conkle is 59.

Mrs. Conkle suffers from a degenerative disc problem which causes her to be able to work only four days a week. Mr. Conkle reports no health problems.

Despite her physical limitations, Mrs. Conkle continues to be able to work thirty-two hours per week. Although she would like to retire in two years, there does not appear to be any reason why she could not continue in her employment until the normal retirement age of sixty-five. Other than a depressed economy, there is no impediment to Mr. Conkle's return to the work force. He likewise should be able to work until age sixty-five.

Mrs. Conkle is a registered nurse with an additional degree in social psychology. She is also a certified alcoholism counselor. She is in her thirteenth year of employment at Ohio State University Hospital as a staff nurse and sometimes manager of the adult psychiatric unit. Mr. Conkle is a licensed surveyor who previously owned a surveying company. Schedule B indicates that he may also be a licensed barber.

The debtors own their residence which has a fair market value of $107,000. At the time they filed their bankruptcy petition, the real property was subject to a mortgage of $72,468.18. They also own two individual retirement accounts worth about $4,000 each. Given their ages, should the debtors choose to cash in these IRA's, there would be no ten-percent penalty for early withdrawal. They also scheduled a $7,000 tax refund for 2000 indicating perhaps that Mrs. Conkle's net income could be increased if her tax withholdings were reduced. In addition, Mrs. Conkle owns, free and clear, a 1993 Volvo valued at $3,000 and a mink coat worth $1,000.

Due to their relatively advanced ages, the debtors' ability to save for their retirement over the next five to six years is limited. However, this limitation is offset by Mrs. Conkle's pension under the Public

Employees Retirement System and the debtors' eligibility for social security benefits. She estimated that she would receive from $1,000 to $1,200 in monthly benefits upon her retirement. Since she planned to retire at age sixty-two, these benefits would presumably be higher if she continues to work until normal retirement age. The estimated $1,140 in total social security benefits would also be higher if the debtors waited until full retirement age to enroll.

Lastly, the debtors have not identified any special needs or any other financial obligation, such as alimony or support.

Having considered the factors set forth in the *Mann* case, the Court concludes that the trustee has shown by a preponderance of the evidence that the tax deferred annuity is not reasonably necessary for the debtors' support. In arriving at this conclusion, the Court also considered the fact that the entire amount of the annuity was comprised of voluntary contributions made by Mrs. Conkle through payroll deductions. These deductions, minus any tax advantage, could have been used to meet the debtors' expenses, and thus served to reduce the nearly $80,000 unsecured debt the debtors discharged in this chapter 7 case.

For the foregoing reasons, the trustee's objection to the debtors' claim of exemption in the tax deferred annuity with ING Aetna is **SUSTAINED.**

**IT IS SO ORDERED.**